IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HOWARD RIMSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-00553-CV-RK |
| | ) |
| AMAZON LOGISTICS, INC., VENUS, LLC, AMAZON.COM SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is the motion for summary judgment filed by Amazon Logistics, Inc. and Amazon.com Services, LLC ("Defendant Amazon"). (Doc. 142.) The motion is fully briefed. (Docs. 143, 161, 166.) For the reasons below, (1) the motion is **GRANTED** as to Plaintiff Howard Rimson's MHRA harassment and aiding and abetting racial harassment claims as contained in Counts 1 and 4, and Plaintiff's § 1985 civil conspiracy claim as contained in Count 3; and (2) the motion is **DENIED** in all other respects.

### Background[1]

Plaintiff, who is African American, began employment as a seasonal delivery associate with Amazon.com Services LLC on July 5, 2019. (Doc. 143 at ¶ 1.) Plaintiff worked at an Amazon delivery station designated as DMC2. (*Id.* at ¶ 2.) Drivers from DMC2 delivered Amazon packages to customers. (*Id.* at ¶ 3.) At the start of his seasonal employment, Plaintiff attended a two-day orientation on package delivery and safety procedures. (*Id.* at ¶ 5.) There were about 20 to 30 others of various races in the orientation. (*Id.* at ¶ 6.)

During employment, drivers would receive their assigned route at the DMC2, pick up a Rabbit device (cellular device used to provide driving directions, call dispatch, report concerns, and view customer information), keys, credit card, and van loaded with packages to be delivered. (*Id.* at ¶ 9; Doc. 161 at ¶ 9.) Plaintiff typically delivered packages to the customer's front door or garage door (depending on instructions from the customer), took a picture of the package, and then

---

[1] The Court has omitted some properly controverted facts, assertions that are immaterial to the resolution of the pending motion, assertions that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

went back to his vehicle for the next delivery. (Doc. 143 at ¶ 11.) In 2019, most Amazon drivers at DMC2 drove unmarked white transit vans without any Amazon logos. (*Id.* at ¶ 14.) Drivers raised concerns about the unmarked vans because their identity as drivers for Amazon was not apparent from the vans when they entered customers' properties. (*Id.* at ¶ 15.)

Plaintiff does not claim that anyone affiliated with Defendant Amazon made racial slurs or engaged in racial discrimination or harassment toward him during that seasonal employment. (*Id.* at ¶ 16.) Plaintiff claims he had negative encounters with members of the public while making deliveries for Amazon, including racial name-calling. (*Id.* at ¶ 17; Doc. 161-1 at 3.) Plaintiff testified he reported negative or racial encounters with the public to managers Matthew Way, Grant Crowley, Jeremy Eckert, and Karl Chaney. (Doc. 143 at ¶ 24.) Plaintiff made such reports "quite a few times." (*Id.*) Plaintiff indicates that none of the reports submitted in writing have been produced by Amazon. (Doc. 161 at ¶ 24.) The last report Plaintiff made was about an incident in which a group of Caucasian men in a rural area fired gunshots at him in his van in December 2019. (Doc. 143 at ¶ 25.)

The gunshot incident occurred on December 8, 2019, as Plaintiff was making a delivery in an unmarked van in an unfamiliar area. He mistakenly drove past his destination. (*Id.* at ¶ 26.) About three houses past his destination, he pulled into a non-customer's driveway to turn around. (*Id.*) Plaintiff recalls the delivery was "in the country area," but he does not recall the address or the city. (*Id.* at ¶ 27.) At the non-customer's house where Plaintiff turned around, there were six white men standing by a fire pit. (*Id.* at ¶ 28.) As Plaintiff backed out of the driveway, Plaintiff saw one of the men appear to say something, but Plaintiff's van windows were up and his radio was too loud to hear what was said. (*Id.* at ¶ 29.) Plaintiff testified the non-customer pulled out a shotgun and fired three shots. (*Id.* at ¶ 30.) Plaintiff does not know the direction from which the shots were fired but believes it was toward the van. (*Id.*)

Plaintiff believed that the non-customer's actions were racially motivated because "[w]hat other reason would any group of white males have any reason to shoot at an Amazon driver that's of color? . . .There's no other reason that I can think of. I didn't do anything wrong to anybody. Just doing my job." (*Id.* at ¶ 31.) Plaintiff called dispatch on his Rabbit and told area manager Mr. Way what happened. (*Id.* at ¶32.) Plaintiff testified that Mr. Way said, "[a]re you serious?" and laughed. (*Id.* at ¶ 34.) Plaintiff then called supervisor Mr. Chaney, who told him to return to DMC2. (*Id.* at ¶ 35.) Plaintiff testified he filled out a report on a blank piece of paper and he and

2

Mr. Chaney walked it to Human Resources and submitted it to an African American woman there, but there was no discussion with her about the incident. (*Id.* at ¶ 37.) Plaintiff testified the next day he was re-routed to the same area in which he had shots fired at him. (Doc. 161 at Plt. ¶ 61.)

In January 2020, Amazon ended the employment of all seasonal drivers at DMC2, including Plaintiff's. (Doc. 143 at ¶40.) When their seasonal employment ended, Amazon advised the seasonal drivers that some had been chosen to work with a Delivery Service Partner (DSP) and that the rest could seek employment with the DSPs. (*Id.* at ¶ 42; Doc. 161 at ¶ 42.)

In January of 2020, Plaintiff applied for a Delivery Associate position with DSP Defendant Venus. (Doc. 143 at ¶ 44; Doc. 161 at ¶ 44.) Because of a delay caused by a background check issue with Venus, Plaintiff applied for employment with DSP Precise in February 2020. The background check for Precise was successful. (Doc. 143 at ¶¶ 46-7.) Plaintiff was scheduled to attend driver training for Precise on March 3 and 4, 2020. (*Id.* at ¶ 48.) The training took place in a training room at DMC2. (*Id.*) DMC2 was a restricted-access facility, and individuals were supposed to have a badge to enter the facility or needed to be escorted in and through the facility. (*Id.* at ¶ 49.) Trainees did not have badges and were required to be escorted to areas of the facility outside the training room, aside from the restrooms. (*Id.* at ¶ 50; Doc. 161 at ¶ 50.)

On March 3, 2020, Plaintiff reported to DMC2 for the first day of training along with approximately 30 other trainees of various races. (Doc. 143 at ¶ 51.) The trainer for the first day of training was Stevie Swan, an Amazon employee. (*Id.* at ¶ 52.) Plaintiff had seen Ms. Swan at DMC2 previously, but he had never spoken with her. (*Id.* at ¶ 53.)

Plaintiff missed approximately the first 30 to 40 minutes of Ms. Swan's training. (*Id.* at ¶ 54; Doc. 161 at ¶ 54.) Ms. Swan typically gave an overview of expectations at the beginning of her trainings, including instructing trainees that cellphones were not allowed in class except for the two times when they could use them to take pictures of slides that provided numbers drivers could use in case of an emergency. (Doc. 143 at ¶ 55; Doc. 161 at ¶ 55; Doc. 143-8 at 5.) Plaintiff used his cellphone during the class, taking pictures of slides. Ms. Swan told him to put the phone away, and he put it down on his desk. (Doc. 143 at ¶ 57; Doc. 161 at ¶ 57.) Toward the end of the slide show, Ms. Swan instructed the class to use their phones to take pictures of a certain slide. (Doc. 143 at ¶ 61.) Plaintiff asked why it was okay to take pictures then, but when he was taking pictures earlier it was an issue. (*Id.* at ¶ 62.) Soon thereafter, Ms. Swan asked, told, or ordered

3

Plaintiff to leave the classroom. (*Id.* at ¶ 65; Doc. 161 at ¶ 65.) Plaintiff said he wanted to talk to Lena Brooks, who was at that time the Operations Manager for Venus. (Doc. 143 at ¶ 67.)

The parties dispute what happened next, including whether Plaintiff shoved Ms. Swan on the way out of the training room door or whether she held the door and he walked out without touching her, but Plaintiff ultimately exited the door to the warehouse. (*Id.* at ¶¶ 68-73.) Plaintiff then spoke to Ms. Brooks from Venus and told her what happened in the training room. (*Id.* at ¶ 76.) Ms. Brooks walked Plaintiff out of the building and told him she would call him to follow up. (*Id.* at ¶ 77.) Plaintiff did not receive a call from anyone at Venus in early 2020. (*Id.* at ¶ 78.) Plaintiff does not recall trying to contact anyone at Precise after the training room incident, and he does not know why he was not called back by Precise. (*Id.* at ¶ 79.)

On the day of the training, Plaintiff heard no race-related comments from Ms. Swan, nor did he hear Ms. Swan say anything about Plaintiff's December 2019 report concerning the gunshot incident (which she testified she was not aware of). (*Id.* at ¶¶ 80, 83.) In his deposition, Plaintiff testified:

> Q. What makes you think that Stevie [Swan]'s actions in asking you to leave the class were based on your race?
>
> A: I've never said that.
>
> Q: Okay. So you don't believe that her asking you to leave the class was based on your race?
>
> A: No, not at all.

(*Id.* at ¶ 81.) Plaintiff felt like Ms. Swan asked him to leave the class because he was not doing what she wanted him to do and it was "just like a control thing." (*Id.* at ¶ 82.)

Ms. Brooks testified Ms. Swan had told her that Plaintiff had pushed her as he left the door of the training classroom. (Doc. 161 at Pltf. ¶ 1.) Ms. Brooks testified she asked Bianca Hayes, Amazon Human Resources Manager, to see any video of the events of the March 3, 2020 training room incident between Plaintiff and Ms. Swan. (*Id.*) Ms. Brooks testified that the videos she saw with Ms. Haynes indicated that Ms. Swan opened the door for Plaintiff and held it open as Plaintiff left the room and that he did not touch Ms. Swan. (*Id.* at Plt. ¶¶ 4-5.) Generally, based on her observations of how Ms. Swan treated driver trainees, Ms. Brooks testified Ms. Swan was harder on non-Caucasians than Caucasians. (*Id.* at Pltf. ¶ 72.) She further testified that it was her opinion that Ms. Swan was biased against non-Caucasians in the training room, and particularly that Ms. Swan was being biased against Plaintiff because he was black. (*Id.* at Pltf. ¶¶ 74-75.)

4

On May 14, 2020, Plaintiff filed a charge of discrimination with the EEOC, which described the December 2019 gunshot incident, and stated "I believe the aggressive conduct was based on racial hostility." (Doc. 143 at ¶ 84.) The charge did not mention any other alleged racial encounters with third parties during Plaintiff's seasonal employment. (*Id.*) The charge also described events after Plaintiff's seasonal employment ended, including the delayed background check in early 2020 and the March 3, 2020 incident in the training class. (*Id.*)

By September 2020, Mr. Chaney had left Amazon and was employed as Operations Manager for Venus. (*Id.* at ¶ 85.) In September 2020, Plaintiff spoke to Mr. Chaney about possible employment with Venus. (*Id.* at ¶ 86.) Plaintiff had not yet completed training, which was a requirement for delivery of Amazon packages. (*Id.* at ¶ 87.) Mr. Chaney testified that Amazon trainer Alicia Callahan told him that Plaintiff should not be allowed to onboard because of the situation with Ms. Swan and Plaintiff could not start training "due to I guess a lawsuit at the time[.]" (*Id.* at ¶ 88; Doc. 143-3 at 3.) On September 17, 2020, Mr. Chaney told Plaintiff he would not be hired at Venus. (Doc. 143 at ¶ 95.)

Plaintiff filed his third amended complaint on March 16, 2022, consisting of four multi-part counts:

- Count 1, violation of the Missouri Human Rights Act ("MHRA"), alleging race discrimination, harassment, and aiding and abetting;
- Count 2, violation of the MHRA, § 213.070, alleging retaliation and aiding and abetting;
- Count 3, violation of 42 U.S.C. §§ 1981 (discrimination, retaliation) and 1985 (civil conspiracy); and
- Count 4, violation of the MHRA and Title VII, alleging race discrimination, harassment, and retaliation.

## Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

5

summary judgment should be granted." *Smith-Bunge v. Wis. Cent., Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019) (citation omitted).

At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Rule 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Rule 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Rule 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). To controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [he] relies." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006) (citation omitted).

## Discussion

In discrimination cases, a plaintiff can establish a claim by presenting either direct evidence or circumstantial evidence. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010); *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007). Here, Plaintiff presents no direct evidence of discrimination and relies on circumstantial evidence. In such cases, the Court applies the *McDonnell-Douglas* burden-shifting framework. *Id. Lake* summarizes the framework well:

> Under *McDonnell Douglas*, the plaintiff initially has the burden to establish a prima facie case of discrimination. A prima facie case creates a rebuttable presumption of discrimination. The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its decision. If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination.

*Lake*, 596 F.3d at 873-74 (internal citations and quotations omitted).

Defendant Amazon contends it is entitled to summary judgment on each of Plaintiff's claims against it. (Doc. 142.)

6

I.  **Racial Harassment Claims: MHRA and Title VII (Counts 1 and 4)**

Defendant Amazon argues Plaintiff cannot establish he was subjected to unlawful race-based harassment. (Doc. 143 at 18.) Defendant Amazon further argues Plaintiff cannot show that Defendant Amazon failed to properly address any alleged race-based harassment. (*Id.* at 19.) Plaintiff contends his hostile work environment claims against Amazon in Count 4 arise under 42 U.S.C. § 1981, the MHRA, Mo. Rev. Stat. § 213.055, and Title VII, 42 U.S.C. § 2000e. (Doc. 161 at 81-82.)

The Court first notes that in Plaintiff's third amended complaint, Counts 1 and 4 do not reference 42 U.S.C. § 1981. (Doc. 83 at 17.) Moreover, Plaintiff also characterizes various incidents as constituting harassment that he did not raise in his administrative charge.

To establish racial harassment under Title VII and the MHRA, Plaintiff must prove (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was because of his race; (4) the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Watson v. Heartland Health Laboratories, Inc.*, 790 F.3d 856, 861 (8th Cir. 2015). "The second and third elements are not satisfied only with overt racial slurs and the like, but there must be some evidence connecting the conduct complained of to the plaintiff's race." *LaBlance v. Mo. Dep't of Corrs.*, No. 19-00693-CV-W-BP, 2021 WL 5541945, at *4 (W.D. Mo. Jan. 13, 2021) (citing *Singletary v. Mo. Dep't of Corrs.*, 423 F.3d 886, 892 (8th Cir. 2005)). "'[S]peculation and conjecture' that the conduct relates to the plaintiff's race is insufficient." *Id.* (quoting *Anderson v. Durham D&M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010)). "The fourth element contains both objective and subjective components, and the objective component requires consideration of all the circumstances in the workplace, 'including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance.'" *Id.* (quoting *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 540 (8th Cir. 2014)).

For a plaintiff to prevail on a hostile work environment claim, "'[t]he workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive.'" *Id.* (quoting *Anderson*, 606 F.3d at 518; and *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004)). The conduct of which Plaintiff complains has to be "'extreme

7

in nature and not merely rude or unpleasant.'" *Id.* (quoting *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006)). "'[C]ourts are to filter out those complaints concerning the ordinary tribulations of the workplace [because] simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id.* (quoting *Anderson*, 606 F.3d at 519 (cleaned up)). "A hostile work environment claim under the MHRA contains similar elements." *Edwards v. PAR Elec. Contractors, Inc.*, No. 19-00126-CV-W-BP, 2019 WL 2745743, at *7 (W.D. Mo. July 1, 2019) (citing *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 797-98 (Mo. Ct. App. 2018)).

"[S]ome conduct well beyond the bounds of respectful and appropriate behavior is nonetheless insufficient to be severe and pervasive." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1083 (8th Cir. 2021) (internal quotation marks omitted). "In determining whether a workplace environment was sufficiently hostile or abusive, we look at the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 578 (8th Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, evidence in the record would not permit a jury to conclude that Plaintiff experienced harassment so severe and pervasive as to change the terms or conditions of his employment. Plaintiff admitted he does not claim anyone affiliated with Amazon made any racial slurs or engaged in racial discrimination or harassment toward him during his seasonal employment with Amazon. (Doc. 161 at ¶ 16.) The incident of white men firing shots at Plaintiff's van when he went onto private property of a non-customer in a rural area, while serious and severe, (1) bears no connection to any employee or customer affiliated with Amazon, (2) is not related to Plaintiff's race beyond "[s]peculation and conjecture," *Anderson*, 606 F.3d at 519, and (3) cannot be characterized as pervasive, given its one-time occurrence.

Plaintiff testified in deposition that "quite a few" incidents occurred at work, most from delivering in rural areas, of "racial slurs" or being subjected to racial name-calling, including "[n]igger," by different individuals in different rural areas, and that he made complaints about some of them to Amazon employees. (Doc. 161-1 at 10-13.) However, Plaintiff's claims of harassment are brought pursuant to the MHRA and Title VII (Counts 1 and 4) (Doc. 83 at 5, 17), and Plaintiff did not raise any of these incidents involving racial slurs or name-calling in his

8

administrative charge. Because the MHRA and Title VII require a Plaintiff to exhaust available administrative remedies and Plaintiff has not done so as to these alleged incidents of harassment, such alleged incidents are not properly before the Court and cannot defeat Defendant Amazon's summary judgment motion on this matter.

Considering the totality of the circumstances properly before the Court and viewing the evidence in the record in the light most favorable to Plaintiff, a jury could not conclude that Plaintiff experienced harassment so severe and pervasive as to change the terms or conditions of his employment in those complaints for which Plaintiff exhausted his administrative remedies.

## II. Racial Discrimination and Retaliation Claims

Defendant Amazon asserts Plaintiff cannot show Defendant Amazon is liable for the decisions by Precise or Defendant Venus not to hire Plaintiff as they are independent companies who were free to hire or not hire Plaintiff for any role other than delivering packages out of DMC2. (Doc. 143 at 22.) Defendant Amazon further argues Plaintiff cannot show there was discrimination or retaliation in hiring by either Precise or Defendant Venus. (*Id.* at 23.)

### A. Racial Discrimination Claims: MHRA (Counts 1 and 4); § 1981 (Count 3); Title VII (Count 4)

Title VII and the MHRA both make it unlawful for an employer to fail or refuse to hire, discharge, or otherwise to discriminate against any individual because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(a); Mo. Rev. Stat. § 213.055(1)(a).

#### 1. Prima Facie Case

For his § 1981 and MHRA claims, under *McDonnell Douglas*, Plaintiff must first establish a prima facie case of discrimination: 1) he is a member of a protected group; 2) he was qualified for the relevant position; 3) he suffered an adverse employment action; and 4) he suffered that adverse action under circumstances giving rise to an inference of discrimination. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011). *See Roxas v. Presentation College,* 90 F.3d 310, 315 (8th Cir.1996) (Title VII analysis applies to claims under Section 1981); *Hossaini v. Western Mo. Med. Ctr.,* 97 F.3d 1085, 1088 (8th Cir.1996) (Title VII analysis applies to claims under MHRA).

Plaintiff is African American, and as such is a member of a protected group. There does not appear to be any argument that he was not otherwise qualified for the relevant driver position(s). The adverse employment actions he complains of include that "he was not hired in

either March 2020 or September 2020 because of Amazon's denial of and role in excluding him from participation in the driver training class and further in blacklisting [him]." (Doc. 161 at 90-91.)

"The required prima facie showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the prima facie case . . . by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (internal quotation marks omitted). In addition, "if a non-decisionmaker performs an act motivated by a discriminatory bias that is intended to cause, and that does proximately cause, an adverse employment action, then the employer has cat's-paw liability[.]" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1045 (8th Cir. 2011) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)). "This theory requires that there be a person possessing both (1) the necessary animus and (2) influence, leverage or control over the decisionmaker, such that it could be said the decisionmaker was acting at the person's bidding." *Edwards v. Lynch*, 111 F. Supp. 3d 989, 1003 (W.D. Mo. 2015) (citing *Qamhiyah v. Iowa State Univ. of Science & Tech.*, 566 F.3d 733, 742-45 (8th Cir.2009).

Here, there is sufficient evidence to raise a question of material fact as to whether the failure to hire Plaintiff in March 2020 was proximately caused by Ms. Swan's making Plaintiff leave the required training, which allegedly was motivated by her racially discriminatory bias and intended to cause Plaintiff not to be hired. Also, there is sufficient evidence to raise a question of material fact as to whether the failure to hire Plaintiff in September 2020 was proximately caused by Ms. Swan communicating to Defendant Amazon (the message also reaching DSP Venus) that Plaintiff would not be allowed to train due to the March 2020 training room incident, which allegedly was motivated by her racially discriminatory bias and intended to cause Plaintiff not to be hired.

In particular, Ms. Brooks testified that generally, based on her observations of how Ms. Swan treated driver trainees, Ms. Swan was harder on non-Caucasians than Caucasians. She further testified to her opinion that Ms. Swan was biased against non-Caucasians in the training room, and particularly that Ms. Swan was being biased against Plaintiff because he was African American. Immediately following the training room incident with Ms. Swan, Ms. Brooks walked Plaintiff out of the building and told him she would call him to follow up. However, Plaintiff never received a call from anyone at Defendant Venus in early 2020. Plaintiff does not recall trying to contact anyone at Precise after the training room incident, and he does not know why he

was not called back by Precise. Then, in September 2020, by which time Mr. Chaney was employed as Operations Manager for Defendant Venus, Plaintiff spoke to Mr. Chaney about possible employment with Defendant Venus and was told he would not be hired at Defendant Venus. Mr. Chaney later testified that Amazon trainer Alicia Callahan told him that Plaintiff should not be allowed to onboard because of the situation with Ms. Swan. This record, viewed in the light most favorable to Plaintiff, is sufficient to raise a question of material fact as to whether Plaintiff has established a prima facie case of Defendant Amazon's cat's paw liability for Plaintiff's failure to hire claims.

### 2. Legitimate, Nondiscriminatory Reason

Next, the Court considers whether Defendant Amazon has any legitimate, nondiscriminatory reason for the subject adverse actions. "This burden is exceedingly light; Defendant must merely proffer a non-race, non-age based, or non-retaliatory reason." *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 758 (8th Cir. 2003).

Here, Defendant Amazon argues that (1) in March 2020, DSPs Precise and Defendant Venus discontinued their hiring processes because Plaintiff did not complete required driver training, (2) there is no evidence that Precise or Defendant Venus hired a Caucasian driver instead of Plaintiff (citing *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (plaintiff must prove the employer hired someone from outside the protected class)), and (3) Plaintiff was asked to leave the racially diverse training class due to his own conduct. Defendant Amazon further points out that Plaintiff admitted in his deposition that Ms. Swan did not ask him to leave the training due to his race.

At this stage, the Court finds Defendant Amazon has sufficiently proffered a legitimate, nondiscriminatory reason for the subject adverse actions.

### 3. Pretext

Finally, the Court turns to whether Plaintiff has offered sufficient evidence of pretext to survive summary judgment. To rebut Defendant Amazon's legitimate, nondiscriminatory reasons, Plaintiff must "point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence does not directly contradict or disprove the defendant's articulated reasons for its actions." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995 (8th Cir. 2011) (cleaned up). "Plaintiff must . . . establish the existence of facts which if proven at trial would permit a jury to conclude that the defendant's proffered reason is pretextual

11

and that intentional discrimination was the true reason for the defendant's actions." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995). To do so, Plaintiff "may show that [Defendant Amazon's] explanation is unworthy of credence because it has no basis in fact, or [he] may show pretext by persuading the court that discriminatory animus more likely motivated [Defendant Amazon]." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 975 (8th Cir. 2012). Plaintiff's "burden to show pretext merges with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination." *Torgerson*, 643 F.3d at 1046 (internal quotation marks omitted).

Here, the testimony from Ms. Brooks (an employee of Defendant Venus) that she observed Ms. Swan (an employee of Defendant Amazon) treat African American trainees more harshly than Caucasian trainees and be biased against non-Caucasians and testimony from Mr. Chaney that Amazon trainer Alicia Callahan told him that Plaintiff should not be allowed to onboard because of the situation with Ms. Swan is sufficient to meet Plaintiff's burden at this stage. In short, although Defendant Amazon has explanations and facts to support a contrary inference, the evidence presented by Plaintiff establishes a genuine issue of fact. Therefore, from these facts taken as a whole, a reasonable trier of fact could find intentional discrimination by Amazon employee, Ms. Swan, led to the adverse employment actions against Plaintiff.

**B. Retaliation Claims: MHRA (Counts 2 and 4); § 1981 (Count 3); Title VII (Count 4)**
    **1. MHRA (Counts 2 and 4) analysis**

A retaliation claim is not "conditioned on the success of the underlying discrimination" claim. *Minze v. Mo. Dep't of Pub. Safety*, 437 S.W.3d 271, 275-76 (Mo. Ct. App. 2014). An employer cannot "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by th[e MHRA.]" § 213.070.1(2), RSMo. "A retaliation claim under the MHRA requires [Plaintiff] to show that (1) he complained of an MHRA-prohibited activity, (2) [Defendant] took an adverse employment action, and (3) a causal connection exists between the complaint and adverse action." *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) (internal quotation marks omitted). The MHRA has defined "because" to mean, "as it relates to the adverse decision or action, the protected criterion was the motivating factor." § 213.010(2), RSMo. "Motivating factor" is defined to mean "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." § 213.010(19), RSMo.

12

## 2. § 1981 (Count 3) analysis

To establish a prima facie case of retaliation pursuant to § 1981, Plaintiff must show: (1) he engaged in protected activity; (2) he suffered a material adverse employment action; and, (3) there was a causal connection between the protected activity and the adverse action. *Young v. Builders Steel Co.*, 754 F.3d 573, 579 (8th Cir. 2014).

The Court applies the same analysis "to § 1981 retaliation claims and to retaliation claims under Title VII of the Civil Rights Act of 1964." *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013). "Although the wording of § 1981 differs from that of Title VII, the underlying retaliation analysis is the same and [the Court] may look to Title VII precedent to inform [its] analysis of the elements under § 1981." *Id.* "Protected activity under Title VII includes, (1) opposition to employment practices prohibited under Title VII, and (2) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII." *Comstock v. Consumers Mkts., Inc.*, 953 F. Supp. 1096, 1103 (W.D. Mo. 1996). "A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status - a reduction in title, salary, or benefits." *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (cleaned up).

## 3. Discussion

Plaintiff argues his protected activity includes the following:

> in December 2019, . . . his written and oral complaints to DMC2 managers and supervisors about racial incidents and in his complaint in December 2019 to Amazon's DMC2 Area Manager Matthew Way and Amazon Supervisor Karl Chaney, about being shot at. Both Chaney and Way understood the matter as involving a racial matter. Section III, ¶¶ 22A, 23B. On December 10, 2019, Chaney also sent an email to Human Resources Manager Bianca Hayes informing her about the incident and using Plaintiff's words, referring to it as a "Klan incident." Plaintiff also engaged in protected activity as a driver trainee in his March 3, 2020 training class. Driver Trainer Stevie Swan understood that Plaintiff was asking her why he was being treated unfairly when she allowed the class to take pictures of the slide show presentation when earlier, she had not allowed Plaintiff to use his phone to take pictures of the slides. Venus Operations Manager Brooks herself observed the racial bias of Swan in her different treatment of driver trainees based on race. On March 3, 2020, Brooks reported to Hayes that Plaintiff had been removed from the class based on his skin color and asked [her] to investigate. Plaintiff filed a Charge of Discrimination against Amazon in May 2020.

(Doc. 161 at 90.) Plaintiff connects the same adverse action with his claims of retaliation as identified for his race discrimination claims: "Amazon's exclusion of Plaintiff from the required training it controlled and blacklisting of Plaintiff denying him employment as an Amazon delivery driver in March 2020 and September 2020[.]" (Doc. 161 at 87.)

Here, Plaintiff raises a question of fact as to whether Ms. Swan and Ms. Hayes knew about Plaintiff's complaints about the December 2019 incident in which he was shot at, which Mr. Way and Mr. Chaney understood and communicated to be racial. However, complaining that a non-customer shot at Plaintiff's unmarked van when he went onto their property without permission and characterizing the incident as racial because the shooter and group he was with was Caucasian does not constitute opposing a prohibited employment practice, and accordingly any question of fact on this matter is not material and is insufficient to defeat summary judgment as to any claim of retaliation involving Plaintiff's complaint about the incident.

On the other hand, the Court finds Plaintiff's questioning of why he was being treated differently as to cell phone use during the March 2020 training with Ms. Swan, when viewed in light of evidence that Ms. Swan treated trainees differently based on race, could reasonably be viewed by a jury as constituting the protected activity of expressing opposition to the prohibited employment practice of discriminating against any individual because of race. There is no dispute that Plaintiff's filing a charge of discrimination in May of 2020 constituted a protected activity. Plaintiff sets forth evidence that Ms. Callahan told Mr. Chaney that Plaintiff should not be allowed to onboard because of the situation with Ms. Swan and that Plaintiff could not start training "due to I guess a lawsuit[2] at the time" establishing knowledge by Defendant Amazon and the apparent decisionmaker of the protected activity.

Next, the Court considers whether Defendant Amazon has any legitimate, non-retaliatory reason for the subject adverse actions. "This burden is exceedingly light; Defendant must merely proffer a . . . non-retaliatory reason." *Ottman*, 341 F.3d at 758. Here, Defendant Amazon gives three reasons why DSPs Precise and Defendant Venus discontinued their hiring processes as to Plaintiff in March 2020. First, because Plaintiff did not complete required driver training. Second, because Plaintiff was asked to leave the racially diverse training class due to his own conduct. And finally, third, to the extent Ms. Callahan told Mr. Chaney that Plaintiff would not be allowed to onboard, she did so because of Plaintiff's behavior in March 2020 involving Ms. Swan, not

---

[2] This appears to be a misstatement referring to Plaintiff's charge of discrimination filed in May of 2020.

14

because of Plaintiff's charge of discrimination (the "lawsuit"). The Court finds Defendant Amazon has sufficiently proffered a legitimate, non-retaliatory reason for the alleged adverse actions.

Finally, the Court turns to whether Plaintiff has offered sufficient evidence of pretext to survive summary judgment. To rebut a defendant's legitimate, non-retaliatory reasons, a plaintiff must "point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence does not directly contradict or disprove the defendant's articulated reasons for its actions." *Wierman*, 638 F.3d at 995 (cleaned up). "Plaintiff must . . . establish the existence of facts which if proven at trial would permit a jury to conclude that the defendant's proffered reason is pretextual and that [retaliation] was the true reason for the defendant's actions." *Krenik*, 47 F.3d at 958. To do so, a plaintiff "may show that [a defendant's] explanation is unworthy of credence because it has no basis in fact, or [he] may show pretext by persuading the court that [retaliatory] animus more likely motivated [defendant]." *Guimaraes*, 674 F.3d at 975. A plaintiff's "burden to show pretext merges with the ultimate burden of persuading the court that [he was] the victim of [retaliation]." *Torgerson*, 643 F.3d at 1046 (internal quotation marks omitted).

Here, the testimony from Ms. Brooks and Mr. Chaney is sufficient to meet Plaintiff's burden at this stage. Although Defendant Amazon has explanations and facts to support a contrary inference, the evidence presented by Plaintiff establishes a genuine issue of fact. Therefore, from these facts taken as a whole, a reasonable trier of fact could find retaliation led to the adverse employment actions against Plaintiff.

### III. Aiding and Abetting Claims: Racial Discrimination and Harassment (Count 1), Retaliation (Counts 2 and 4)

Defendant Amazon contends because there was not discrimination or retaliation, there can be no "aiding and abetting" claim. "Missouri law defines 'aiding and abetting' as 'affirmatively act[ing] to aid the primary tortfeasor' by giving 'substantial assistance or encouragement' to him." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1079 (8th Cir. 2021) (quoting *Bradley v. Ray*, 904 S.W.2d 302, 315 (Mo. Ct. App. 1995)).

To the extent a question of fact exists as to Plaintiff's race discrimination claim against Defendant Amazon, Defendant Amazon's argument as to Plaintiff's aiding and abetting race discrimination claim fails. Defendant Amazon is not entitled to summary judgment as to Plaintiff's

claim that Defendant Amazon aided and abetted racial discrimination. Likewise, because there is a question of material fact as to Plaintiff's retaliation claim, Defendant Amazon is not entitled to summary judgment as to Plaintiff's claim that Defendant Amazon aided and abetted retaliation.[3]

## IV. Civil Conspiracy Claim: § 1985 (Count 3)

Defendant Amazon argues that summary judgment should be granted in its favor on Plaintiff's civil conspiracy claim under 42 U.S.C. § 1985, and that because Plaintiff did not address the deficiencies in that claim, Plaintiff conceded summary judgment as to that claim.

The Court finds Plaintiff fails to support his § 1985 civil conspiracy claim and Defendant Amazon is entitled to summary judgment thereon.

---

[3] The Missouri Supreme Court recently decided the case of *State ex rel. Swoboda v. Missouri Commission on Human Rights*, 651 S.W.3d 800 (2022). In that case, the plaintiff brought a charge of discrimination against his employer, the Kansas City Police Department ("KCPD"), and a law firm retained to represent his employer in a separate case. *Id.* at 802-03. The plaintiff claimed that KCPD retaliated against him for supporting another officer who brought a charge of discrimination against KCPD. *Id.* The plaintiff also alleged that the law firm aided and abetted KCPD's retaliation by telling him to think about his career before he testified at the deposition. *Id.* Subsequently, the MCHR dismissed the plaintiff's claim against the law firm on the ground that it lacked jurisdiction because the plaintiff did not allege he had an employer-employee relationship with the law firm. *Id.* The plaintiff then sought mandamus relief in the circuit court, which was granted, the circuit court ordering the MCHR to directing the Commission to rescind its dismissal, accept the charge, and conduct an investigation. *Id.* at 803. The Missouri Supreme Court reversed and remanded the circuit court's judgment in the plaintiff's favor. The Missouri Supreme Court reasoned:

> Mandamus proceedings may be used to enforce a clear, specific, unequivocal right that is presently existing. They cannot be utilized to adjudicate whether an individual is afforded a right but, rather, can compel performance of a right only that has already been established. Here, the ability to pursue a claim under section 213.070.1, absent an employer-employee relationship, does not plainly follow from relevant statutory provisions. [The plaintiff] does not cite any prior Missouri decisional law that has interpreted section 213.070 to not require an employment relationship, nor does he produce any other authority demonstrating he can pursue his claim. Rather than seeking to enforce a previously delineated right, [the Plaintiff] attempted to adjudicate whether, under applicable statutes, his claim was permissible. The issuance of mandamus relief was foreclosed in this case in which an issue of first impression is presented.

*Id.* at 813. The Missouri Supreme Court thus held the circuit court's decision to grant mandamus relief was in error.

Although *Swoboda* analyzes the permissibility of an employment discrimination claim in the absence of an employer-employee relationship, it is distinguishable from Plaintiff's claims in this case. A claim for failure to hire plainly follows from the relevant statutory provisions, which contemplate the absence of such relationship, as it is inherent in the nature of the claim.

16

**Conclusion**

Accordingly, (1) Defendant Amazon's motion is **GRANTED** as to Plaintiff Howard Rimson's MHRA harassment and aiding and abetting racial harassment claims as contained in Counts 1 and 4, and Plaintiff's § 1985 civil conspiracy claim as contained in Count 3; and (2) the motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 26, 2023